United States District Court
Southern District of Texas
**ENTERED**
December 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| Bertha Salinas, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action M-23-283 |
| | § | |
| State Farm Lloyds, | § | |
|     *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant's Motion for Partial Summary Judgment. ECF No. 12. The motion is **GRANTED**.

### *1. Facts*

The relevant facts are undisputed. Plaintiff Bertha Salinas sued State Farm Lloyds (State Farm) in state court for damages resulting from State Farm's denial of her claim under her homeowner's insurance policy. ECF No. 1-2 at 5. Salinas alleges that her residence was damaged in a weather event occurring on July 26, 2020. *Id.*

State Farm inspected Salinas's property twice. After the first inspection, State Farm sent a first payment on September 3, 2020, in the amount of $3,022.59. ECF No. 12-2 at 109. In the letter enclosing the first payment, State Farm described those parts of Salinas's home where no damage was located and explained that other damages were the result of wear and tear, settling, rot and deterioration, and surface water. *Id.* State Farm explained that those types of damages were not covered under the policy and cited

the relevant policy provisions. *Id.* at 109–11. State Farm also enclosed its building estimate which described in detail each part of Salinas's home, whether State Farm found covered damage, and the cost to repair those parts of the home that suffered covered damage. ECF No. 12-2 at 118–44.

State Farm inspected the property again on March 26, 2021, and made an additional payment. ECF No. 12-2 at 145. In a letter dated April 16, 2021, State Farm explained that the additional payment of $2,058.76 was the net of the actual cash value to repair or replace the covered damage ($25,139.47) less depreciation ($10,374.12), the deductible ($9,684.00), and the first payment ($3,022.59.). *Id.* In the April 16, 2021 letter, State Farm explained its disagreement with Salinas's $217,225.04 estimate of damages. *Id.* at 145–46. State Farm took the position that Salinas's estimate included costs for repairs not covered by the policy. *Id.* State Farm's April 16, 2021 decision was essentially the same as its September 2, 2020 position, except that it included cleaning of stucco and additional items necessary to repair the interior of the home. *Id.* at 145. State Farm has not changed its coverage or damages decisions since April 16, 2021. The April 16, 2021 payment was the last payment State Farm made to Salinas.

Salinas disagreed with State Farm's valuation of the damages to her property so she invoked the appraisal provision under the policy. ECF No. 1-2 at 5. State Farm participated in the appraisal process without objection but under a reservation of rights. *Id.* at 5–6; ECF No. 12-2 at 180. The appraisers could not agree on the amount of damages, so an umpire was designated to

resolve the dispute. ECF No. 1-2 at 6. The umpire agreed with Salinas's appraiser and signed an award on March 30, 2023. *Id.* State Farm did not pay the appraisal award. *Id.* Plaintiff's counsel sent a written inquiry about payment of the appraisal award to State Farm on May 25, 2023. *Id.* On June 30, 2023, State Farm stated that it would not be paying the appraisal award. *Id.*

In the June 30, 2023 letter, State Farm explained that it had agreed in a June 2, 2021 letter[1] to participate in the appraisal process without waiving any of its rights under the policy. ECF No. 12-2 at 180. In the June 30, 2023 letter, State Farm described several problems with the appraisal process as reasons for its refusal to pay the award. *Id.* at 180–81. State Farm also stated that the appraisal award included amounts for repairs that were not covered under the policy. *Id.* at 182-83. State Farm stood by its earlier conclusions and discussed their engineer's March 22, 2022 report, which detailed many categories of damages not covered under the policy, such as those due to temperature fluctuations, design defects, construction defects, and damages arising from a storm a decade earlier. *Id.* at 183–84.

### 2. *Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018)

---

[1] The June 2, 2021 letter is not in the summary judgment record, but there is no dispute about State Farm's June 30, 2023 characterization of it.

3

(quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

### 3. Analysis

State Farm argues that the statute of limitations bars all of Salinas's claims, except for her fraud claim. The parties agree on the relevant limitations periods. Claims under the Texas Insurance Code must be brought within two years after "the date the unfair method of competition or unfair or deceptive act or practice occurred." Tex. Ins. Code § 541.162. As is permitted under Texas law, the parties agreed in the insurance policy that suit for

breach of the insurance contract and for prompt payment of claims under the insurance contract must be brought within two years and one day after the cause of action accrues. ECF No. 12-1 at 33. The parties disagree about when Salinas's claims accrued. State Farm argues that it was on April 16, 2021, when it sent the letter announcing its final claim decision and enclosing the final payment. ECF No. 12 at 4. Salinas argues it was on June 30, 2023, when State Farm refused to pay the appraisal award. ECF No. 15 at 1.

In Texas, a cause of action accrues when a wrongful act causes a legal injury, even if the injury is not discovered until later and even if all the resulting damages have not been discovered. *Smith v. Travelers Cas. Ins. Co.*, 932 F.3d 302, 311 (5th Cir. 2019) (citing *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015)). In the context of a first party insurance claim, a cause of action normally accrues when facts come into existence that authorize the plaintiff to seek a judicial remedy. *Abedinia v. Lighthouse Prop. Ins. Co.*, No. 12-20-00183-CV, 2021 WL 4898456, at *3 (Tex. App.—Tyler Oct. 20, 2021, pet. denied). Similarly, a breach of contract action accrues when the plaintiff has notice of facts sufficient to place them on notice of the breach. *Id.* Thus, the general rule is that the limitations period begins to run when coverage is denied. *Id.*

In determining whether and when coverage has been denied, the court must focus first on whether an unambiguous denial has been communicated, and then must ask whether there is evidence that the decision had been subsequently withdrawn or changed

either by making payment or by taking other action inconsistent with the decision to deny coverage. *Smith,* 932 F.3d at 314 (discussing *Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632, 633–34 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

The April 16, 2021 letter is an unambiguous denial of Salinas's full claim. The letter enclosed a payment of $2,058.76, which represented the total estimate to repair the property less depreciation, the deductible, and the previous payment. ECF No. 12-2 at 145. The letter discussed Salinas's $217,225.04 estimate and rejected it on the basis that it included repairs that were not covered under the policy. *Id.* at 146. The letter also stated that "[State Farm's] findings as outlined in our September 3, 2020 letter remain unchanged except as noted in this letter." *Id.* This was a clear and unambiguous denial of coverage that triggered the running of the limitations period. *Cf. Pace*, 162 S.W.3d at 633–34 (finding a letter that stated the property damage was not covered, that the damage was due to causes excluded from the policy, and that no payment would be forthcoming to be an unambiguous denial of coverage triggering the running of the limitations period).

Salinas argues that State Farm's participation in the appraisal process rendered its final decision ambiguous. The court disagrees. An insurer's consideration of additional information from the insured or participation in the appraisal process after denying coverage does not alter the finality of an otherwise unambiguous decision to deny coverage. *See Pace*, 162 S.W.3d at 633–35; *Smith*, 932 F.3d at 315; *Abedinia*, 2021 WL 4898456, at *4. As the court explained in *Pace*, if engaging with the insured

6

after a decision to deny coverage would operate to restart the limitations period, "an insurer faced with a request for reconsideration of a denial of coverage would be put to the choice between refusing it outright, thereby risking a bad faith claim, or considering the request and restarting the limitations period." *Pace*, 162 S.W.3d at 634–35. The court concluded that no authority or rationale existed to support such an approach. *Id.* at 635.[2]

Salinas argues that State Farm's refusal to pay the appraisal award was itself a separate, actionable wrong, which started anew the running of the limitations period. The court disagrees. Unlike an arbitration award, for example, an appraisal determines only the amount of loss, not whether the insurer is liable under the policy. *Sec. Nat. Ins. Co. v. Waloon Inv., Inc.,* 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Failure to pay an appraisal award, by itself, does not entitle the plaintiff to judgment or establish a breach of contract. *Rodriguez v. State Farm Lloyds*, No. 7:15-CV-328, 2017 WL 7000563, at *2–3 (S.D. Tex. Mar. 8, 2017). As the court explained in *Abedinia*:

> [T]his is a single claim for a single event of damage, and [the insurance company] made a clear determination in writing to accept the claim and attached a check to satisfy the claim . . . . [The insurance company] did not depart from [that] determination, and [the plaintiff] had clear notice of facts giving rise to a claim for relief. That is, at that time, [plaintiff] believed [the insurance company]

---

[2] The court notes that Salinas did not submit evidence of additional damages beyond those identified earlier. Nor did State Farm withdraw or change its decision or make any additional payment after April 16, 2021. Those things could very well have restarted the limitations period. *See Pace*, 162 S.W.3d at 635.

7

breached the contract by underpaying his claim. *Abedinia*, 2021 WL 4898456, at *5.

Salinas had at her disposal on April 16, 2021, every fact necessary to form the belief that State Farm was not going to pay her full claim and that State Farm was in breach of the insurance contract. Thus, Salinas's claim accrued on April 16, 2021, when coverage was denied. Because Salinas's cause of action accrued on April 16, 2021, she had until April 17, 2023, to file this lawsuit. Salinas filed this lawsuit on July 18, 2023, more than three months late, so all of her claims other than fraud are barred by limitations.

Salinas makes three other arguments that the court will address briefly. First, this not a case where the insurance company strung the insured along without either denying or paying a claim, as Salinas argues. State Farm communicated its decision and paid the claim on April 16, 2021. It never took any action inconsistent with the position it took on that date.

Second, Salinas cites *Dailey v. Certain Underwriters at Lloyds London*, No. 4:21-CV-1957, 2022 WL 2818750, at *7, (S.D. Tex. July 19, 2022), for the proposition that refusal to pay the appraisal award starts the limitations period. In that case, the insurance company argued, and the court accepted, that payment of the appraisal award was the latest date on which the limitations period could accrue. *Id.* (relying on cases holding that an insurer's last payment on a claim can conclusively establish the accrual date). The court merely considered the insurance company's letter enclosing payment of the appraisal award to be its final payment, which is not in conflict with the undersigned's finding in this case

that the April 16, 2021 letter indicated State Farm's final decision on Salinas's claim. *See id.*

Finally, the court disagrees with Salinas that the policy prohibits her from bringing suit until after the appraisal process is complete. The policy prohibits a demand for appraisal once suit has been brought. ECF No. 12-1 at 33. It is silent as to whether suit may be brought while the appraisal is ongoing.

### *4. Conclusion*

There are no genuine issues of material fact and State Farm is entitled to judgment on all of Salinas's claims other than her fraud claim. Summary judgment is granted in favor of State Farm on all of Salinas's claims other than her fraud claim.

Signed at Houston, Texas, on December 28, 2023.

_____
Peter Bray
United States Magistrate Judge